IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNILEVER BESTFOODS and KIK CUSTOM PRODUCTS, INC., f/k/a CCL CUSTOM MANUFACTURING, INC.

Plaintiffs,

v.

AMERICAN STEEL & ALUMINUM CORP, *et al*.

Defendants.

CONSOLIDATED
C.A. No. 01-496 L

KIK CUSTOM PRODUCTS, INC., f/k/a CCL CUSTOM MANUFACTURING, INC.

Plaintiff,

v.

ARKWRIGHT INCORPORATED, *et al.*

Defendants.

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ENTER CASE MANAGEMENT ORDER**

Plaintiffs, Unilever Bestfoods and KIK Custom Products, Inc. (f/k/a CCL Custom Manufacturing, Inc.), submit this memorandum of law in support of their Motion to Enter Case Management Order ("CMO") pursuant to Rules 16(b) and 26(f) of the Federal Rules of Civil Procedure. A copy of the proposed Case Management Order is attached hereto as **Exhibit A.**

The case involves claims by the Plaintiffs for the recovery of costs they have incurred in preparing a Remedial Investigation/Feasibility Study ("RI/FS") for Operable Unit No. 2 ("OU-2") at the Peterson/Puritan, Inc. Superfund Site in Cumberland and Lincoln, Rhode Island, which

includes the J.M. Mills landfill. As the Court is aware, Plaintiffs have recently settled with a substantial number of Defendants.[1] The remaining Defendants are connected to OU-2 as a result of either owning or operating the J.M. Mills landfill, generating hazardous waste disposed of at the landfill, and/or transporting hazardous waste to the landfill. Of these remaining Defendants, the substantial majority are parties that generated waste that was disposed of at the landfill. Plaintiffs may establish the liability of these "generator" parties by showing that waste generated by Defendants containing hazardous substances was transported to and disposed of at the landfill or other portions of OU-2. An important source of evidence in this regard is the testimony of truck drivers who hauled the waste from facilities owned and/or operated by the Defendants or from transshipment facilities to the J.M. Mills landfill. These drivers are expected to provide testimony concerning the nature and extent of such waste transported from particular facilities to and disposed of at the landfill. Given these circumstances, a number of Defendants that have not yet settled have expressed great interest in the testimony of these drivers in order to better assess the strengths of the Plaintiffs' claims against them.

The proposed CMO provides what the Plaintiffs believe is the most cost-efficient means for all parties and the Court to address the concerns of the Defendants and resolve the Plaintiffs' remaining claims. Under the CMO, the Defendants would have immediate access to evidence they seek in the form of depositions of current and former employees of companies that hauled waste to the landfill. *See* Proposed CMO ¶ 10. Under the CMO, other discovery and dispositive motions would be stayed so that the parties may focus their resources on these depositions of the truck drivers. Once those depositions are complete and the driver testimony obtained, the Plaintiffs believe that it should be possible to resolve their claims against the remaining

[1] The Plaintiffs will shortly be moving to dismiss certain of the remaining Defendants in order to further streamline the litigation.

Defendants without the need for additional discovery and an expensive trial, which would consume the resources of all the parties and the Court. Accordingly, upon conclusion of the driver depositions, the Plaintiffs propose that the parties engage in mediation. *Id.* ¶¶ 11-12. The ADR process proposed by the Plaintiffs is typical of the type of process that has been employed in other Superfund litigation involving sites around the country. The CMO calls for the Court to appoint a third party neutral ("Neutral"), followed by the submission of position papers to the Neutral. Thereafter, the Neutral may interview witnesses and would conduct mediation sessions, among other duties. *Id.* ¶¶ 13-23. The Plaintiffs believe that this mediation can be conducted and concluded in a timely and efficient manner.

Focusing the initial discovery in depositions of current and former employees of companies that hauled waste to the landfill provides the most cost-efficient way to resolve this case. It provides Defendants with evidence that many of them have identified as particularly important in gauging the strength of Plaintiffs' claims. By engaging in this key discovery and then providing a "time out" from further discovery to allow the parties to engage in further settlement discussions, the Plaintiffs believe that it may be possible to achieve settlements with the remaining Defendants. Conducting discovery on other issues carries the real possibility of unnecessarily driving up costs for all concerned while delaying resolution of the Plaintiffs' claims. Further, if the mediation proves successful, then the process will have saved valuable judicial resources. If the depositions of the truck drivers do not lead to a resolution of the case, then the parties' efforts will not have been wasted because the parties then can resort to full discovery. However, resorting to full discovery at this stage of the case is not yet warranted because the parties have not exhausted the possibilities for resolving this matter short of trial.

Plaintiffs have consulted with counsel for remaining defendants regarding the proposed Case Management Order. Counsel for several of the Defendants, including Leach & Garner Technology, Inc., General Electric Company and Sequa Corporation, have objected to any requirement that the parties engage in mediation. Other defendants have not taken a position with respect to the proposed Case Management Order.

For the above reasons, Plaintiffs respectfully request that the Court issue the attached Order.

Dated: December 20, 2007

Respectfully submitted,

UNILEVER BESTFOODS
By Its Attorneys:

*/s/ Kristen W. Sherman*
MARK DENEHY, ESQ. (#3492)
KRISTEN W. SHERMAN, ESQ. (#5595)
ADLER POLLOCK & SHEEHAN P.C.
2300 Financial Plaza
Providence, RI 02903-2443
(401) 274-7200
Fax: (401) 751-0604/351-4607

-and-

THOMAS C. JACKSON
BAKER BOTTS L.L.P.
1299 Pennsylvania Ave., N.W. - The Warner
Washington, D.C. 20004
(202) 639-7710
Fax: (202) 585-1009

KIK CUSTOM PRODUCTS, INC.
By Its Attorneys:

*/s/ Karen A. Pelczarski*______________
KAREN A. PELCZARSKI, ESQ. (#3357)
BLISH & CAVANAGH
30 Exchange Terrace
Providence, RI 02903
(401) 831-8900
Fax: (401) 351-7542

Of Counsel:
JONATHAN A. MURPHY, ESQ.
(JAM-6052)
LESTER, SCHWAB, KATZ & DWYER, LLP
125 Broadway
New York, New York 10271-0071
(212) 964-6611
Fax: (212) 267-5916

**CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of December, 2007, I caused a copy of the within to be sent by electronic means (ECF) to the following counsel of record:

- **Stephen Adams**
  sadams@taylorduane.com
- **Melody A. Alger**
  melody.alger@bgmalaw.com
- **Julie P. Barry**
  jpbarry@nutter.com
- **Charles S. Beal**
  cbeal@cm-law.com
- **Gregory L. Benik**
  gbenik@jreri.com
- **Stephen J. Brake**
  sbrake@nutter.com
- **Kevin J. Bristow**
  KJBristowlaw@verizon.net
- **Christopher R. Bush**
  cbush@riag.ri.gov
- **Alexandra K. Callam**
  acallam@haslaw.com
- **Andrew C. Coulam**
  acoulam@taylorduane.com, fconnor@taylorduane.com
- **Willliam M. Dolan, III**
  wdolan@browudnick.com
- **Douglas J. Emanuel**
  demanuel@crfllp.com
- **Alden C. Harrington**
  harrington@bhrlaw.com
- **Thomas C. Jackson**
  thomas.jackson@bakerbotts.com
- **Bret W. Jedele**
  bjedele@crfllp.com
- **Kevin J. McAllister**
  kmcallister@bresm.com
- **James J. McGair**
  jmcgair@hotmail.com
- **Keven A. McKenna**
  KevenM@McKennaLaw.cc
- **Mark A. McSally**
  mmcsally@kkrs.com

- **Matthew F. Medeiros**
  mfm@lmkbw.com, dcabral@lmkbw.com, kocteau@lmkbw.com
- **Donald P. Nagle**
  nagle@dpnaglelaw.com
- **Mortimer C. Newton**
  mortneon@gmail.com
- **Scott P. Partington**
  scott@b-plaw.com
- **Karen Ann Pelczarski**
  kap@blishcavlaw.com
- **Gerald J. Petros**
  gpetros@haslaw.com
- **Thomas J. Plunkett**
  tplunkett@kprlaw.com
- **James T. Price**
  jprice@spencerfane.com
- **Thomas P. Quinn**
  tquinn@fmmesq.com
- **Deming E. Sherman**
  dsherman@eapdlaw.com
- **Dean S. Sommer**
  dsommer@youngsommer.com
- **Randall L. Souza**
  rsouza@shslarm.com

and by mail to the following counsel of record:

| | |
|---|---|
| John J. Andreason, Esq.<br>McGrath, North, Mullin & Kratz, PC LLO<br>Suite 3700<br>1601 Dodge Street<br>Omaha, NB 68102 | Jonathan A. Murphy, Esq.<br>Lester Schwab Katz & Dwyer<br>120 Broadway<br>New York, NY 10271-0071 |
| Steven Crowley, Esq.<br>U. S. Dept. of Justice<br>Environmental Defense Section<br>P. O. Box 23986<br>Washington, DC 20026 | Michael E. Kozlik, Esq.<br>Douglas A. Cohen<br>Brown Rudnick Berlack Israels LLP<br>CityPlace I, 185 Asylum Street<br>Hartford, CT 06103-3402 |
| William D. Gillis, Jr., Esq.<br>Donovan Hatem LLP<br>World Trade Center East<br>Two Seaport Lane<br>Boston, MA 02210 | Irvin M. Freilich, Esq.<br>Gary N. Donner, Esq.<br>Robertson, Freilich, Bruno & Cohen, LLC<br>One Riverfront Plaza<br>Newark, NJ 07102 |

| | |
|---|---|
| Brian M. Privor, Esq.<br>Kenneth A. Rubin, Esq.<br>Michael W. Steinberg, Esq.<br>Morgan, Lewis & Bockius LLP<br>1111 Pennsylvania Avenue, NW<br>Washington, DC 20004 | |

*/s/ Kristen W. Sherman*

438957_1.DOC

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNILEVER BESTFOODS, ET AL., Plaintiffs, v. AMERICAN STEEL & ALUMINUM CORP., ET AL., Defendants. | : | |
| CCL CUSTOM MANUFACTURING, INC. Plaintiff, v. ARKWRIGHT INCORPORATED, ET AL., Defendants. | : | CONSOLIDATED C.A. No. 01-496 L |

**CASE MANAGEMENT ORDER NO. 1**

A. WHEREAS, the case of *Unilever Bestfoods, et al. v. American Steel & Aluminum Corp., et al.*, No. 01-CV-496, was filed on October 15, 2001, and

B. WHEREAS, the case of *CCL Custom Manufacturing, Inc. v. Arkwright, Inc., et al.*, No. 01-511L, was filed on October 23, 2001, and was subsequently consolidated with No. 01-CV-496, and

C. WHEREAS, the consolidated actions, and the counterclaims and cross-claims all arise in substantial part under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, and all address the alleged liability of various parties with regard to the J.M. Mills Landfill and adjacent areas that have been defined by the U.S. Environmental Protection Agency ("EPA") as part of Operable Unit 2 of the Peterson/Puritan, Inc. Superfund Site in Cumberland, Rhode Island (the "Site"), and

D. WHEREAS, the plaintiffs have successfully negotiated settlements with a significant number of parties while continuing to undertake work on the Remedial Investigation/Feasibility Study ("RI/FS") for Operable Unit 2 at the Site and have negotiated an amendment to the Administrative Order on Consent with EPA concerning the work at the Site in conjunction with certain of the settling defendants which has in turn allowed other settling defendants to obtain contribution protection from EPA pursuant to Sections 113(f)(2) and 122(h)(4) of CERCLA for "matters addressed" in the Administrative Order on Consent, and

E. WHEREAS, certain parties believe that the use of mediation may facilitate settlement among the remaining parties, and have requested that this Court approve an Alternative Dispute Resolution ("ADR") process as described in detail below, and have further requested that the ADR process be embodied in an Order of this Court, and

F. WHEREAS, it is appropriate to allow certain discovery among the parties to proceed in order to facilitate further settlement discussions, and

G. WHEREAS, the Court has determined that the orderly conduct of this litigation and the just, speedy, and efficient resolution of these cases require the entry of this Case Management Order ("CMO") pursuant to Rules 16(b) and 26(f) of the Federal Rules of Civil Procedure, and good cause appearing,

WHEREFORE, IT IS this ___ day of _________, 2007, hereby ORDERED:

## A. CASE MANAGEMENT

### Amended Complaints and Third-Party Complaints

1. Plaintiffs are granted leave to file amended complaints and defendants are granted leave to file third party complaints until ninety (90) days after entry of this CMO.

2. After ninety (90) days from the entry of this CMO, upon application to the Court, any party may seek to file an amended complaint or third party complaint to add additional parties.

### Answers

3. Any defendants which have been served but which have not yet filed an answer shall file answers to the complaint(s) within ten (10) days of the entry of this CMO. Any defendant in either action which has filed an answer may file an amended answer within twenty (20) days of the entry of this CMO. Any defendant subsequently joined in either action shall file an answer to the complaint(s) within thirty (30) days of the date of service.

### Claims Deemed Asserted and Denied

4. Without the need for actual pleading and except as otherwise stated in any pleading, each defendant having filed, at any time, an answer to any complaint or amended complaint (1) shall be deemed to have asserted third party claims or cross-claims, as applicable, for statutory and/or common law contribution and indemnity against every other defendant,

whether then a party to the case or thereafter added, and (2) shall be deemed to have asserted a counterclaim for statutory and/or common law contribution and indemnity against every plaintiff and third-party plaintiff. Any party which does not wish to be deemed to have asserted a crossclaim or counterclaim or third party claim, as applicable, for statutory and/or common law contribution and indemnity against any other party must file a pleading opting out of asserting or being deemed to have asserted such claims.

5. Without the need for actual pleading and except as otherwise stated in any pleading, each party to the litigation shall be deemed to have denied each and every such cross-claim or counterclaim asserted, or deemed to have been asserted, against it, and to have asserted any and all affirmative defenses thereto.

**Communications and Privilege**

6. All information and/or documents exchanged by and among the plaintiffs (other than information and/or documents produced in discovery or information and/or documentation generated as part of the response action at the site) shall be deemed to be communications for the limited purpose of assisting in a common prosecution in this litigation and such exchange shall not constitute a waiver of any privilege, whether attorney-client, work product, trade secret or other privilege, if any, that may apply under the Federal Rules of Evidence or any other federal or state law.

7. All information and/or documents exchanged by and among the defendants in joint defense groups (other than information and/or documents produced in discovery) shall be deemed to be communications for the limited purpose of assisting in a common defense in this litigation and/or to be evidence of compromise and offers to compromise pursuant to Rule 408 of the Federal Rules of Evidence, and such exchange shall not constitute a waiver of any privilege, whether attorney-client, work product, trade secret, or other privilege, if any, that may apply under the Federal Rules of Evidence or any other federal or state law.

8. Nothing herein shall constitute a basis to exclude from discovery factual information and raw data which are otherwise discoverable.

9. All parties and their counsel shall preserve any information or documents in their possession, custody, or control that constitute or contain material or information that may be relevant or discoverable in this matter. All parties and their counsel shall take reasonable steps to communicate the requirements of this provision to those individuals employed by the party who must know of this provision in order for it to be effective.

## B. DISCOVERY

10. Plaintiffs are authorized to proceed with the depositions of current and former employees of companies that hauled waste to the J.M. Mills landfill in order to preserve the testimony of said individuals.

11. All other discovery and trial preparation and all dispositive motions shall be stayed as to all parties in order to allow the ADR Process provided for in this CMO to proceed. This stay shall remain in full force and effect until further order of this Court.

12. No depositions of any party shall be permitted in the litigation during the pendency of the stay provided in this CMO, except with the express approval of the Court where the depositions are required to preserve testimony or where a reasonable basis for concern exists that a fraudulent conveyance or dissipation of assets has occurred or may occur.

## C. ADR PROCESS

13. In order to reduce the transaction costs associated with multi-party CERCLA litigation and enhance the opportunity for settlement, the Court hereby approves the use of an ADR Process to address certain issues in the litigation.

14. The ADR Process as described below is a confidential process involving all remaining parties in these consolidated cases.

### Appointment of Neutral

15. The Court shall appoint a third party neutral ("Neutral") for the ADR Process, *i.e.*, to act as a non-binding mediator.

16. The Court authorizes the Neutral to address within the ADR Process any and all issues in dispute among the parties in connection with the allocation of liability for costs incurred in connection with the conduct and preparation of the Remedial Investigation/Feasibility Study ("RI/FS") in this matter, including but not limited to all dispositive issues of liability and the scope of liability for the RI/FS. The ADR Process shall not extend to the allocation of liability for costs related to the design and implementation of any remedy for the Site. The Neutral shall not provide legal services to any party or representative of a party in connection with the Site.

### ADR Schedule

17. The ADR Process will begin at the conclusion of the depositions identified in paragraph 11 and is expected to be completed on or about _________, 2008. The completion dates may be modified upon approval by the Court.

### ADR Process

18. Each of the parties shall submit a paper to the Neutral setting forth its position regarding the appropriate allocation of costs incurred in connection with the RI/FS. The schedule for submission of such papers shall be established by the Neutral in consultation with the parties. The Neutral may submit to any or all parties any request for more information or requests for documents that the Neutral, in the Neutral's discretion, determines should be provided to facilitate settlement discussions.

19. The Neutral may conduct interviews under oath before a court reporter of any third parties willing to be so interviewed and/or a party's current or former employees, officers, directors or agents who may have relevant knowledge concerning the alleged liability of the party if the Neutral believes that such interviews may materially assist in achieving a settlement among the parties. Witnesses designated by the Neutral for interview shall be made available by each party, or, in the case of a former employee, officer, director or agent, shall appear without

any effort made by the party to prevent such interview. In addition, the Neutral may request a party to submit affidavits and certifications by appropriate individuals relating to information and documents.

20. If the Neutral deems it appropriate in order to facilitate settlement negotiations, the Neutral may prepare a non-binding Allocation Report and submit it to each party. The report may include evaluations of the substantive arguments in the position papers, percentages for each party, a rationale for the allocation and all findings as to other disputed issues.

21. Following the submission of the position papers, the Neutral shall schedule a mediation session at a time and place to be determined by the Neutral in consultation with the parties. Each party shall be represented at the initial mediation session or any subsequent meetings by a client representative who is authorized to make settlement recommendations or bind the party and may be represented by other persons of the party's choice, including counsel; provided that, during any period of mediation presentations, shuttle diplomacy, or negotiations, if the client representative in attendance does not have full settlement authority, that client representative must have timely telephone access to a representative of the party with full settlement authority.

22. The Neutral may schedule a second mediation session if the Neutral believes that a second session will be productive and may facilitate a resolution of the dispute and if the parties concur. The Neutral may hold subsequent sessions and discussions with counsel for the parties on the telephone or in person.

23. Following the conclusion of any mediation sessions with the Neutral, the parties shall seek a Case Management Conference with the Court within sixty (60) days which will address the termination of the ADR Process. Following consultations with the parties, the Court may adopt provisions to finalize any settlement reached and/or may terminate the ADR Process as unsuccessful as to some or all of the participants and/or take such other action as the Court deems appropriate.

**Joint Expenses**

24. Each party shall pay a per capita share of all joint expenses incurred in the ADR Process from the date of this CMO forward, including fees and costs of the Neutral. The Neutral's fee shall not exceed $___ per hour, effective ________, 2008 which rate may be adjusted annually thereafter. The Neutral may, in the Neutral's discretion, use assistants billing at lower rates. The costs of the ADR Process will include the Neutral's costs for actual out-of-pocket expenses including travel, telephone, mailing and facsimile transmissions, copying costs, time spent with the parties, time required to study documents, research issues, correspond, make telephone calls, prepare reports, make court appearances, and do such other things as may be reasonably necessary to facilitate parties reaching full agreement. The Neutral's costs may also include the time required to travel to individual meetings, court conferences, or mediation sessions. Joint expenses shall not include legal and technical fees incurred by a party.

25. The Neutral shall provide to all parties monthly invoices, including detailed descriptions of all fees and expenses incurred up to that date by the Neutral.

26. The law firm of _______ may maintain an escrow account of up to $50,000 for payment to the Neutral, shall submit written quarterly reports on the account to all counsel, and may invoice each party a per capita amount as provided for in this Order so as to maintain that balance. At the time of each additional assessment, the Neutral shall provide to all counsel a list of projected ADR Process tasks to be covered by that assessment. Any funds remaining in escrow at the end of the ADR Process shall be returned to all parties on a per capita basis.

**Confidentiality of the ADR Process**

27. The following confidentiality provisions shall apply to all information and documents generated and exchanged in the ADR Process ("ADR Process Information"), which includes but is not limited to any Allocation Report prepared by the Neutral, document request answers and responses, affidavits, expert reports, witness interviews, witness interview transcripts, answers to questions from the Neutral, submissions to the Neutral, conversations and meetings among the parties or groups or subgroups of parties and conversations and meetings among the parties or groups or subgroups of parties and the Neutral.

(a) Any party may elect to disclose or transmit to the Neutral and the other parties ADR Process Information which the party deems appropriate and necessary to the party's participation in the ADR Process. Subject to the provisions of this CMO, all ADR Process Information shall be held in confidence, shall not be utilized for any purpose other than participation in the ADR Process, and shall not be disclosed except to counsel and experts or consultants and other persons assisting such counsel and experts and consultants in the ADR Process and insurance carriers, all of whom agree to be bound by this CMO and subject to the terms of this CMO. All ADR Process Information shall constitute compromise negotiations under Federal Rule of Evidence 408, and, subject to subparagraphs (c) and (f) below, shall not be discoverable in this or any other proceeding. No claim of attorney-client or work product privilege, confidential business information or trade secret shall be deemed waived by reason of distribution of ADR Process Information as part of the ADR Process.

(b) No allocation information relating to another party shall be disclosed without that party's prior written consent.

(c) These confidentiality provisions shall not apply to information which now or hereafter becomes public knowledge without violation of this CMO or any other order entered by this Court or which is sought and obtained by any party pursuant to applicable discovery procedures and not otherwise protected from disclosure.

(d) The Neutral shall not be subject to discovery in any court or administrative tribunal with regard to the ADR Process and/or the ADR Process Information, including, without limitation, information or documents submitted by any party under these confidentiality provisions or interviews conducted pursuant to this ADR Process nor shall the Neutral be subject to discovery with regard to any report or analysis of the Neutral rendered during the ADR Process.

(e) The ADR Process Information shall not be admissible or disclosed to the Court. However, ADR Process Information prepared by a party may be utilized by that party in

connection with the consolidated actions and the confidentiality provisions of this CMO shall not apply to such use. Documents concerning a party submitted by that party in connection with the ADR Process which existed prior to the initiation of this ADR Process and which would not otherwise be protected from disclosure except by this CMO may be admitted to the Court to the extent that they are obtained from such party pursuant to applicable discovery procedures after termination of the ADR Process.

(f) Any party's participation in this ADR Process, including its submission of ADR Process Information or other statements and communications, shall not be deemed an admission of any fact, fault or liability and shall be without prejudice to any position a party may take in this matter or any other matters.

(g) To the extent that a party to the ADR Process becomes subject to discovery requests in this proceeding and/or any other action or administrative proceeding, the confidentiality provisions applicable to all ADR Process Information which is produced by parties in the ADR Process shall not be asserted as a basis to withhold from production non-privileged documents attached to, or submitted with, ADR Process submissions where such documents are otherwise discoverable pursuant to the Federal Rules or statutes.

(h) These confidentiality provisions shall remain in full force and effect whether any action arising out of this Site is terminated by final judgment or settlement.

28. The parties through their counsel shall advise the Court on a quarterly basis of the progress of the ADR Process.

## D. MISCELLANEOUS

29. Any party may serve on all other parties in writing a notice of its intent to dismiss any or all claims against another party. If no party objects in writing within (14) fourteen days of service of the notice of intent to dismiss, the party seeking to dismiss the claims may file a stipulation of dismissal representing that all parties have acquiesced in the dismissal and such representation shall satisfy the requirements of Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure for dismissal without prejudice.

30. The filing of any dispositive motions shall be stayed pending the conclusion of the ADR Process.

31. Prior to moving to enforce compliance with the provisions of this CMO, the affected parties shall first confer to attempt to resolve the matter.

________________________________
Ronald R. Lagueux
Senior U.S. District Judge

Dated: _________, 2007
Providence, Rhode Island