IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNILEVER BESTFOODS and KIK CUSTOM PRODUCTS, INC., f/k/a CCL CUSTOM MANUFACTURING, INC.<br><br>Plaintiffs,<br><br>v.<br><br>TEKNOR APEX COMPANY; QUEBECOR WORLD HALLIDAY, INC. f/k/a Halliday Lithograph Corp.; LEACH & GARNER TECHNOLOGY, INC.; SEQUA CORP. f/k/a Sun Chemical Corp.; WYMAN-GORDON COMPANY; DAVID BRASK; GENERAL ELECTRIC CO. f/k/a GE-CEP; HOLLINGSWORTH & VOSE CO.; THREE R's TRANSPORTATION, INC.; BENJAMIN MOORE & CO.; INTERNATIONAL PAPER CO. f/k/a Allied Container Corp.; and ACS INDUSTRIES, INC.<br><br>Defendants. | : | Civil Action No. 01-496L |

FOURTH AMENDED COMPLAINT

Pursuant to this Court's Order, Plaintiffs Unilever Bestfoods and KIK Custom Products, Inc. (hereinafter collectively referred to as "Plaintiffs"), by and through the undersigned attorneys, hereby amend their complaint in Civil Action No. 01-496L as follows:

STATEMENT OF THE CASE

1. This is a civil action for cost recovery and contribution under Sections 107 and 113(f)(3)(B) and 113(g)(2) of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA"), 42 U.S.C. §§ 9607, 9613(f)(3)(B) as amended, for declaratory relief under Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), and the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, and for equitable indemnity under state common law. In this action the Plaintiffs seek to recover costs that they have incurred and may incur in

responding to the contamination at the J.M. Mills Landfill and surrounding areas in Cumberland, Rhode Island (hereinafter, "the Site"). These areas have been designated by the U.S. Environmental Protection Agency ("EPA") as covered by the "Operable Unit 2" work to be performed in connection with the Peterson/Puritan, Inc. Superfund Site located in Cumberland and Lincoln, Rhode Island.

2. In Count I, Plaintiffs Unilever Bestfoods and KIK Custom Products, Inc. seek to recover their necessary response costs incurred in responding to the release and/or threatened release of hazardous substances at, on, near or from the Site pursuant to the strict, joint and several liability provisions of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

3. In Count II, Plaintiffs Unilever Bestfoods and KIK Custom Products, Inc., having paid more than their respective equitable shares of the response costs incurred or to be incurred in investigating and responding to such release and/or threatened release of hazardous substances at, on, near or from the Site, seek contribution from Defendants pursuant to Sections 107(a) and 113(f)(3)(B) of CERCLA, 42 U.S.C. §§ 9607(a), 9613(f)(3)(B), for their equitable share of such costs.

4. In Count III, Plaintiff Unilever Bestfoods asserts a claim for equitable indemnity under Rhode Island common law against Defendants to recover the same response costs for which it seeks recovery under Count I.

5. In Count IV, Plaintiffs Unilever Bestfoods and KIK Custom Products, Inc. seek a declaratory judgment pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), and the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, that Defendants are jointly and severally liable for the response costs incurred or to be incurred by the Plaintiffs in connection

with the Site and/or their equitable share of such costs, and such other relief as the Court may deem appropriate.

6. In addition, Plaintiffs Unilever Bestfoods and KIK Custom Products, Inc. also request a declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that each of the Defendants is required to provide contribution to Plaintiffs pursuant to CERCLA Section 113(f)(3)(B), 42 U.S.C. § 9613(f)(3)(B), for all costs in excess of each Plaintiff's fair and equitable share of costs that the Plaintiffs have incurred and may incur in connection with the Site.

JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this action pursuant to 42 U.S.C. §§ 9607 and 9613(b) and 28 U.S.C. § 1331, and under the doctrine of supplemental jurisdiction under 28 U.S.C. § 1367.

8. This Court has authority to issue a declaratory judgment concerning the rights and liabilities of the parties pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202 and Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2).

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 9613(b), because the claims arose in this district, the releases or threatened releases of hazardous substances occurred in this district, and the defendants reside and/or have done business in this district.

10. The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

DEFENDANTS

11. Each of the defendants is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

12. Owner/Operator Defendant - The following defendant is a current or former owner and/or operator of the Site: Defendant, David Brask, is a person with an address at 3990 Placido Del Rico, Las Vegas, NV 89120 (however, when green certified mail card was returned, the address was crossed off and 94258, Las Vegas, NV 89193 was written in its place). David Brask currently owns and/or operates the Site, or is a person who formerly owned and/or operated the Site during the time period in which hazardous substances, as defined under 42 U.S.C. § 9601(14), were transported to and/or disposed of at the Site. The defendant identified in this paragraph 12 shall hereinafter referred to as the "Owner/Operator Defendant."

13. Generator Defendants - Upon information and belief, the following defendants generated and arranged for the disposal of waste material containing hazardous substances at the Site: Defendant, Teknor Apex Company, is a Delaware corporation with a principal place of business located at 505 Central Ave., Pawtucket, RI 02862. Defendant, Quebecor World Halliday, Inc. f/k/a Halliday Lithograph Corp., is a California corporation with a principal place of business located at 340 Pemberwick Road, Greenwich, CT 06831. Defendant, Leach & Garner Technology, Inc., is a Massachusetts corporation with a principal place of business located at P.O. Box 200, North Attleboro, MA 02761-0200. Defendant, Sequa Corp. f/k/a Sun Chemical Corp., is a Delaware corporation with a principal place of business located at 320 Forbes Blvd., Mansfield, MA 02048-1891. Defendant, Wyman-Gordon Company Co., is a Massachusetts corporation with a principal place of business located at 244 Worcester Street, North Grafton, MA 01536-8001. Defendant, General Electric Co. f/k/a GE-CEP, is a New York corporation with a principal place of business located at 1 River Road, P.O. Box 2216, Schenectady, NY 12301-2216. Defendant, Hollingsworth & Vose Co., is a Massachusetts corporation with a principal place of business located at 112 Washington Street, East Walpole,

MA 02032. Defendant, Benjamin Moore & Co., is a New Jersey Corporation with a principal place of business located at 51 Chestnut Ridge Road, Montvale, NJ 07645. Defendant, International Paper Co. f/k/a Allied Container Corp., is a New York Corporation with a principal place of business located at 6400 Poplar Avenue, Memphis, TN 38197. Defendant, ACS Industries, Inc., is a Rhode Island Corporation with a principal place of business located at 191 Social Street, Woonsocket, RI 02895.

Teknor Apex Company, Quebecor World Halliday, Inc. f/k/a Halliday Lithograph Corp., Leach & Garner Technology, Inc., Sequa Corp. f/k/a Sun Chemical Corp., Wyman-Gordon Company Co., General Electric Co. f/k/a GE-CEP, Hollingsworth & Vose Co., Benjamin Moore & Co., International Paper Co. f/k/a Allied Container Corp., and ACS Industries, Inc. are persons who generated and/or by contract, agreement or otherwise arranged for disposal or treatment of hazardous substances, as defined under 42 U.S.C. § 9601(14), or arranged with a transporter for transport for disposal or treatment of hazardous substances, which were transported to and/or disposed of at the Site. The defendants identified in this paragraph 13 shall be collectively hereinafter referred to as the “Generator Defendants.”

14. Transporter Defendant - The following defendants accepted waste materials containing hazardous substances for transport to and/or disposal at the Site: Defendant, Three R’s Transportation, Inc., is a Massachusetts corporation with a principal place of business located at 36 Dillingham Ave., Berkley, MA 02779. Three R’s Transportation, Inc. is liable as a person who accepted waste materials containing hazardous substances for transport and/or disposal at the Site. The defendant identified in this paragraph 14 shall be hereinafter referred to as the “Transporter Defendant.”

THE NPL SITE

15. The Peterson/Puritan, Inc. Superfund Site is listed on the National Priorities List ("NPL") promulgated by the EPA pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, and codified at 40 CFR, Part 300, App. B (2000) (hereinafter the "NPL Site").

16. The EPA has divided the NPL Site into two operable units for the performance of work to remediate and clean-up the NPL Site. These two operable units are referred to as Operable Unit 1 (hereinafter "OU-1") and the Site, which includes Operable Unit 2 ("OU-2"), which includes the Site.

17. The relief sought by Plaintiffs in this action relates solely to Defendants' actions and Plaintiffs' incurrence of response costs at the Site (*i.e.*, OU-2). Although detailed below, the history and cleanup of OU-1 are not at issue in this action.

RELATIONSHIP OF THE PARTIES TO AND HISTORY OF
OPERABLE UNIT 1 (OU-1)

18. OU-1 includes industrial and commercial property, including the former Peterson Puritan, Inc. (now Plaintiff KIK Custom Products, Inc.) facility in Cumberland (the "Cumberland Plant") with residential property to the west and mixed commercial/residential property to the east.

19. CPC International, Inc. ("CPC") (formerly Bestfoods, now Plaintiff Unilever Bestfoods) is the former parent corporation to Peterson Puritan, Inc.

20. On or about April 19, 1966, CPC purchased the stock of Peterson Filling and Packaging Co. ("Peterson Filling"). Thereafter, Peterson Filling operated as a subsidiary of CPC.

21. On or about May 15, 1968, Peterson Filling purchased Puritan Aerosol Corporation, including the Cumberland Plant. As a result, Peterson Puritan, Inc. ("Peterson

Puritan") was formed and operated as a subsidiary in the industrial unit of CPC's Corn Products division.

22. On or about May 1, 1987, CPC, as the parent corporation of Peterson Puritan, entered into an Agreement of Purchase and Sale of Stock (the "Hi-Port Agreement"), transferring all of the stock in Peterson Puritan to Hi-Port Industries, Inc. (now Plaintiff KIK Custom Products, Inc.). Under certain provisions of the Hi-Port Agreement, including the indemnity provisions, CPC agreed to fund and manage the remedial investigation/feasibility study concerning the Cumberland Plant.

23. Thereafter, on or about May 21, 1987, and subsequent to CPC's sale of stock, Peterson Puritan, as a separate entity and on its own behalf, signed an Administrative Order on Consent (the "AOC") with the EPA.

24. On or about January 13, 1992, CPC (formerly Bestfoods, now Plaintiff Unilever Bestfoods) signed a First Amendment to the Administrative Order on Consent (the "First Amended AOC") with the EPA. Under the First Amended AOC, CPC expressly assumed only Peterson Puritan's obligations under Paragraphs 43 and 44 of the AOC for the reimbursement of the EPA's response and oversight costs that the EPA incurs in association with the RI/FS at the site (as that term is used in the AOC).

25. By 1993, the RI/FS for OU-1 was completed and the EPA issued a separate Record of Decision for OU-1. To date, the remedy at OU-1 is being performed in accordance with that Record of Decision.

RELATIONSHIP OF THE PARTIES TO AND HISTORY OF THE SITE (*I.E.*, OU-2)

26. The Site (*i.e.*, OU-2), which is the subject of this action, is located predominantly in the town of Cumberland with a small segment in the town of Lincoln. It is locally known as, and predominantly consists of, the J.M. Mills Landfill.

27. The Site is surrounded by industrial, residential and semi-rural properties. The surrounding area includes: state and town recreational areas; interspersed woodlands and wetlands; portions of the Blackstone River and adjoining canals; and inactive municipal water supply wells, specifically the Quinnville Wellfield in Lincoln, Rhode Island and the Lennox Street wells in Cumberland, Rhode Island.

28. The J.M. Mills Landfill was used for the disposal of wastes, including wastes containing hazardous substances, from approximately 1954 to 1983. During this time period, the J.M. Mills Landfill was privately owned.

29. Groundwater in the vicinity of OU-2 (the Site) has been affected by the release of hazardous substances at and from the NPL Site. The Rhode Island Department of Health closed the Lennox Street well in Cumberland, R.I. in 1979 due to the presence of volatile organic compounds in the municipal water supply. The Quinnville Wellfield in Lincoln, R. I. similarly was closed in 1979. Both the Quinnville Wellfield and the Lennox Street well are part of and/or in the vicinity the Site.

30. Between 1979 and 1982, the Rhode Island Department of Environmental Management conducted inspections and sampling that eventually led to an order closing the J.M. Mills Landfill as of June 30, 1982. During the same period, the EPA began investigating the area, including the J.M. Mills Landfill. The J.M. Mills Landfill would later be designated by the

EPA as part of OU-2 at the NPL Site when the EPA divided the NPL Site into Operable Units in 1990.

31. In approximately 1999, the EPA began to focus on the cleanup of the Site (*i.e.*, OU-2), including primarily the J.M. Mills Landfill.

32. On or about June 21, 2001, in connection with the Site, Plaintiffs signed a Second Amendment to Administrative Order on Consent ("Second Amended AOC") with the EPA.

33. Pursuant to Paragraph 12a of the Second Amended AOC, Plaintiff Unilever Bestfoods, while neither admitting nor denying such status, assumed the limited obligation of paying EPA's response and oversight costs associated with the RI/FS at the Site in its capacity as a signatory of the First Amended AOC. The Second Amended AOC explicitly states that nothing in Paragraph 12a may be deemed an admission on the part of respondent Bestfoods (Plaintiff Unilever Bestfoods).

34. On or about October 14, 2004, Plaintiffs signed a Third Amendment to Administrative Order on Consent ("Third Amended AOC") with the EPA as part of their settlement with certain of the Defendants.

35. Plaintiff Unilever Bestfoods alleges that, under the Third Amended AOC, Plaintiff KIK Custom Products, Inc.'s obligations at the Site are limited to and associated exclusively with completing the RI/FS at the Site. Plaintiff Unilever Bestfoods further alleges that, under the Third Amended AOC, its obligations at the Site are limited to and associated exclusively with reimbursing the EPA for its response and oversight costs associated with the RI/FS at the Site. Under Paragraph 59 of the Third Amended AOC, upon issuance of the Record of Decision for the Site (*i.e.*, OU-2), all of Plaintiffs' obligations under the AOC will terminate

and Plaintiffs will have no further AOC obligations with respect to the Site, specifically, or at the NPL Site, in general.

36. On or about June 21, 2001, in connection with the Second Amended AOC, Plaintiffs also voluntarily signed a Peterson/Puritan, Inc. Superfund Site CERCLA Section 122(h)(1) Agreement for Recovery of Past Response Costs ("Section 122(h) Agreement").

37. Pursuant to the Section 122(h) Agreement, Plaintiffs have paid the EPA its past response costs incurred at the Site (*i.e.*, OU-2).

38. The RI/FS at the Site is currently being performed in accordance with the Third Amended AOC.

## COUNT I
## COST RECOVERY PURSUANT TO 42 U.S.C. § 9607
## (UNILEVER BESTFOODS AND KIK CUSTOM PRODUCTS, INC.)

39. Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 38 as though fully set forth herein.

40. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides in pertinent part:

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for –

* * *

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan . . . .

41. The Site, consisting of the J.M. Mills Landfill and the surrounding area (*i.e.*, OU-2) is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

42. The use, management, handling, storage, discharge, release and/or disposal of "hazardous substances," as defined in Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), at the Site has resulted in a "release" as that term is defined in Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), and/or a "threatened release," as that term is used in CERCLA. This release and/or threatened release has caused and threatens to cause contamination of the environment below, within and adjacent to the Site, including contamination of the soil and groundwater resources at, on, near or from the Site.

43. The hazardous substances that have been released and/or disposed of at the Site have come to be located in the surface and subsurface soils, in sediments, in surface water and in groundwater at, on, or near the Site. The hazardous substances found in the groundwater at, on or near the Site, include, without limitation, volatile organic compounds such as 1,1,1-trichloroethane, trichloroethylene, freon 11, 1,2-dichloroethene and metals such as chromium, nickel and lead. Hazardous substances in soils and sediments include, without limitation,

benzo(a)pyrene, chrysene, indeno(1,2,3+cd)pyrene, bis(2hexyl)phthalate, arochlors, and asbestos insulation/transite.

44. The release and/or threatened release of hazardous substances at, on, near or from the Site have caused Plaintiffs to incur substantial "response costs," as defined in 42 U.S.C. § 9601(25), which have not been reimbursed. Such costs are necessary response costs that have been incurred consistent with the National Contingency Plan, as set forth in 40 C.F.R., Part 300 (2000).

45. Plaintiffs will continue to incur response costs that are necessary costs consistent with the National Contingency Plan in responding to the release and/or threatened release of hazardous substances at, on, near or from the Site.

46. Plaintiffs are entitled to recover the necessary costs of response they have incurred and will incur at the Site from other liable parties.

47. Moreover, Plaintiff Unilever Bestfoods is not a liable "person" within the meaning of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), since it (i) is not a current or former owner or operator of the Site; (ii) has neither generated nor arranged for the transport or disposal of any hazardous substances at the Site; and (iii) has not transported any hazardous substances and selected or substantially participated in the selection of the Site for the disposal of any hazardous substances. In addition, Plaintiff Unilever Bestfoods alleges that its obligations at the Site arise solely out of its status as a signatory to the Second Amended AOC and it cannot be held derivatively liable as a matter of law as the successor to CPC (the former parent corporation of Peterson Puritan, Inc.) with respect to the Site.

48. The Owner/Operator Defendant is or was a record title owner of the Site or a portion thereof, or possessed a legal or equitable ownership interest therein, or possessed a legal

right to use or operate the Site or a portion thereof, and therefore is either a current or former "owner" and/or "operator" of the Site or a portion of the Site, as defined under Section 101(20) of CERCLA, 42 U.S.C. § 9601(20), at the time any hazardous substance was disposed of at the Site. Therefore, the Owner/Operator Defendant is strictly, jointly and severally liable under Section 107(a)(1) and/or Section 107(a)(2) of CERCLA, 42 U.S.C. §§ 9607(a)(1),(2), for the costs which Plaintiffs have incurred and may incur in responding to the release and/or threatened release of hazardous substances at, on, near or from the Site.

49. Each Generator Defendant is a person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances at the Site. Therefore, the Generator Defendants are strictly, jointly and severally liable under Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3), for costs which Plaintiffs have incurred and may incur in responding to the release and/or threatened release of hazardous substances at, on, near or from the Site.

50. The Transporter Defendant is a person who accepted and/or transported waste containing hazardous substances and selected and/or substantially participated in the selection of the Site for the disposal of waste containing hazardous substances. Therefore, the Transporter Defendant is strictly, jointly and severally liable under Section 107(a)(4) of CERCLA, 42 U.S.C. § 9607(a)(4), for costs which Plaintiffs have incurred and may incur in responding to the release and/or threatened release of hazardous substances at, on, near or from the Site.

## COUNT II
## CONTRIBUTION PURSUANT TO CERCLA
## (UNILEVER BESTFOODS AND KIK CUSTOM PRODUCTS, INC.)

51. Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 50 as though fully set forth herein.

52. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides an implied right to contribution for covered persons.

53. Plaintiffs and Defendants are "covered persons" within the meaning of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a). Further, Defendants are each liable or potentially liable under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

54. Further, Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B), provides in pertinent part, that:

> A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not a party to [such] a settlement.

55. Plaintiffs and Defendants are "persons" within the meaning of Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B).

56. Plaintiffs have resolved their liability for the RI/FS for the Site in an administrative settlement with EPA.

57. The release and/or threatened release of hazardous substances at, on, near or from the Site has caused Plaintiffs to incur necessary response costs as defined in 42 U.S.C. § 9601(25), which have not been reimbursed. Plaintiffs will continue to incur additional necessary response costs with regard to the Site.

58. Those response costs incurred and to be incurred by Plaintiffs are consistent with the National Contingency Plan, as set forth in 40 C.F.R. Part 300 (2002).

59. The costs incurred and to be incurred by Plaintiffs Unilever Bestfoods and KIK Custom Products, Inc., respectively, exceed each Plaintiff's proportionate share of potential responsibility at the Site.

60. Plaintiffs are entitled to contribution pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a) and/or Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B), from each Defendant for all costs in excess of each Plaintiff's respective fair and equitable share of costs that it has incurred and may incur in responding to the release and/or threatened release of hazardous substances at, on, near or from the Site.

COUNT III
EQUITABLE INDEMNITY
(UNILEVER BESTFOODS)

61. Plaintiff Unilever Bestfoods incorporates by reference the allegations set forth in Paragraphs 1 through 60 as though fully set forth herein.

62. Plaintiff Unilever Bestfoods alleges that its obligations at the Site arise solely out of its status as a signatory to the Second Amended AOC and the Third Amended AOC, pursuant to which Plaintiff Unilever Bestfoods is obligated to reimburse the EPA for the EPA's response and oversight costs associated with the RI/FS at the Site.

63. In connection with the Second Amended AOC and the Third Amended AOC and pursuant to the Section 122(h) Agreement, Plaintiff Unilever Bestfoods has paid the EPA its past response costs, including recoverable interest, which have not been reimbursed.

64. Plaintiff Unilever Bestfoods alleges that all of the costs incurred and to be incurred by Plaintiff Unilever Bestfoods under the Second Amended AOC, the Third Amended AOC and the Section 122(h) Agreement with respect to the Site are costs for which Unilever Bestfoods has no legal liability or responsibility.

65. As between Plaintiff Unilever Bestfoods and Defendants, equity requires that Defendants pay for the response costs incurred and to be incurred by Plaintiff Unilever Bestfoods in connection with OU-2 (the Site), plus interest.

66. The Owner/Operator Defendant, the Generator Defendants and/or the Transporter Defendant (referred to collectively hereinafter as the "Defendants") are solely liable and/or jointly and severally liable for any and all such costs incurred by Plaintiffs.

67. Each Defendant is thus liable to Plaintiff Unilever Bestfoods for indemnity under the common law of Rhode Island for all sums that Plaintiff Unilever Bestfoods has expended to date or will expend in the future in connection with the Site.

COUNT IV
DECLARATORY JUDGMENT
(UNILEVER BESTFOODS AND KIK CUSTOM PRODUCTS, INC.)

68. Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 67 as though fully set forth herein.

69. Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(9)(2), provides that in any action brought under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), the Court shall enter a declaratory judgment on liability for future "response costs" or "damages," as those terms are defined in CERCLA Sections 101(23), (24) and (25), 42 U.S.C. §§ 9601(23), (24) and (25) and CERCLA Section 101(6), 42 U.S.C. § 9601(6), respectively.

70. An actual controversy, within the meaning of 28 U.S.C. § 2201, exists between the Plaintiffs and each of the Defendants regarding their respective obligations and legal liabilities for response costs and damages that have been and may be incurred by the Plaintiffs in connection with the release and/or threatened release of hazardous substances at, on, near or from the Site.

71. Plaintiffs request a declaration pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), that each Defendant is strict, jointly and severally liable to Plaintiffs under

Section 107 of CERCLA for the costs that Plaintiffs have incurred and may incur in responding to the release and/or threatened release of hazardous substances at, on, near or from the Site.

72. Plaintiffs further request a declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that each of the Defendants is required to provide contribution to the Plaintiffs pursuant to CERCLA Section 107(a), 42 U.S.C. § 9607(a), and/or CERCLA Section 113(f)(3)(B), 42 U.S.C. § 9613(f)(3)(B), for all costs in excess of each Plaintiff's fair and equitable share of costs that the Plaintiffs have incurred and may incur in responding to the release and/or threatened release of hazardous substances at, on, near or from the Site.

73. Plaintiff Unilever Bestfoods further requests a declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that each of the Defendants is required to indemnify Plaintiff Unilever Bestfoods for all further damages, claims, losses, costs and expenses, and other liabilities in connection with Plaintiff Unilever Bestfoods' response to the release and/or threatened release of hazardous substances at, on, near or from the Site.

74. The Court is empowered by 28 U.S.C. §§ 2201 and 2202 to make a judicial determination of the rights, duties and obligations of the parties to resolve the controversy between the Plaintiffs and each of the Defendants, and to grant such further relief as is necessary and proper.

WHEREFORE, Plaintiffs pray that this Court:

1. Enter judgment pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), in favor of Plaintiffs Unilever Bestfoods and KIK Custom Products, Inc. against each of the Defendants holding each such Defendant strictly, jointly and severally liable for the response costs incurred or to be incurred by Plaintiffs in connection with the release and/or threatened release of hazardous substances at, on, near or from the Site;

2. Enter judgment pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and/or Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B), in favor of Plaintiffs Unilever Bestfoods and KIK Custom Products, Inc. and against each of the Defendants holding each such Defendant liable for all response costs in excess of each Plaintiff's respective fair and equitable share of the response costs incurred or to be incurred by the Plaintiffs in connection with the release and/or threatened release of hazardous substances at, on, near or from the Site;

3. Enter judgment in favor of Plaintiff Unilever Bestfoods and against each of the Defendants requiring the Defendants to reimburse Plaintiff Unilever Bestfoods for all sums that it has expended or may expend in connection with the release and/or threatened release of hazardous substances at, on, near or from the Site;

4. Enter a declaratory judgment in favor of Plaintiffs Unilever Bestfoods and KIK Custom Products, Inc. pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), holding each of the Defendants strictly, jointly and severally liable for all additional response costs, plus interest, incurred or to be incurred by Plaintiff Unilever Bestfoods in connection with the release and/or threatened release of hazardous substances at, on, near or from the Site;

5. Enter a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 holding each of the Defendants liable for their proportionate share of all response costs in excess of each Plaintiff's respective fair and equitable share of the response costs incurred or to be incurred by the Plaintiffs in connection with the release and/or threatened release of hazardous substances at, on, near or from the Site;

6. Award Plaintiffs attorneys' fees, costs and disbursements in this action as well as prejudgment interest on all response costs from the date such costs were incurred; and

7. Grant such other relief as this Court deems appropriate.

Respectfully submitted,

UNILEVER BESTFOODS
By Its Attorneys

*/s/ Kristen W. Sherman*
MARK DENEHY, ESQ. (#3492)
KRISTEN W. SHERMAN, ESQ. (#5595)
ADLER POLLOCK & SHEEHAN P.C.
2300 Financial Plaza
Providence, RI 02903-2443
(401) 274-7200
Fax: (401) 751-0604/351-4607

THOMAS C. JACKSON
BAKER BOTTS L.L.P.
1299 Pennsylvania Ave., N.W. - The Warner
Washington, D.C. 20004
(202) 639-7710
Fax: (202) 585-1009

Dated: February 15, 2008

KIK CUSTOM PRODUCTS, INC.
By Its Attorneys:

/s/ *Karen A. Pelczarski*
KAREN A. PELCZARSKI, ESQ. (#3357)
BLISH & CAVANAGH
30 Exchange Terrace
Providence, RI 02903
(401) 831-8900
Fax: (401) 351-7542

Of Counsel:
JONATHAN A. MURPHY, ESQ.
(JAM-6052)
LESTER, SCHWAB, KATZ & DWYER, LLP
125 Broadway
New York, New York 10271-0071
(212) 964-6611
Fax: (212) 267-5916

Dated: February 15, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of February, 2008, I caused a copy of the within to be sent by electronic means (ECF) to the following counsel of record:

| | |
|---|---|
| • **Julie P. Barry** jpbarry@nutter.com | • **Gregory L. Benik** gbenik@jreri.com |
| • **Stephen J. Brake** sbrake@nutter.com | • **Kevin J. Bristow** KJBristowlaw@verizon.net |
| • **Thomas C. Jackson** • thomas.jackson@bakerbotts.com | • **Keven A. McKenna** • KevenM@McKennaLaw.cc |
| • **Mortimer C. Newton** • mortnewton@gmail.com | • **Karen Ann Pelczarski** • kap@blishcavlaw.com |
| • **Martha A. Holt** mholt@eapdlaw.com | • **Robert Wick** bwick@ww-envlaw.com |
| • **Deming E. Sherman** • dsherman@eapdlaw.com | • **Dean S. Sommer** • dsommer@youngsommer.com |
| • **Matthew F. Medeiros** mfm@lmkbw.com, dcabral@lmkbw.com, kocteau@lmkbw.com | |

and by mail to the following counsel of record:

| | |
|---|---|
| William D. Gillis, Jr., Esq.<br>Donovan Hatem LLP<br>World Trade Center East<br>Two Seaport Lane<br>Boston, MA 02210 | Irvin M. Freilich, Esq.<br>Gary N. Donner, Esq.<br>Robertson, Freilich, Bruno & Cohen, LLC<br>One Riverfront Plaza<br>Newark, NJ 07102 |
| Brian M. Privor, Esq.<br>Kenneth A. Rubin, Esq.<br>Michael W. Steinberg, Esq.<br>Morgan, Lewis & Bockius LLP<br>1111 Pennsylvania Avenue, NW<br>Washington, DC 20004 | Jonathan A. Murphy, Esq.<br>Lester Schwab Katz & Dwyer<br>120 Broadway<br>New York, NY 10271-0071 |

/s/ *Kristen W. Sherman*

*444831_1.DOC*